UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNIE WHITE,                              Case No. 13-15172

           Plaintiff,                   Sean F. Cox
v.                                         United States District Judge

COMMISSION OF SOCIAL SECURITY              Michael Hluchaniuk
                                           United States Magistrate Judge
           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 10, 12)**

## I.  PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On December 19, 2013, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for period of disability, disability insurance, and supplemental security income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 10, 12).  These motions are now ready for report and recommendation.

B.    Administrative Proceedings

Plaintiff filed the instant claims for period of disability, disability insurance, and supplemental security income on September 15, 2010, alleging disability beginning September 15, 2010.  (Dkt. 6-2, Pg ID 51).[1]  Plaintiff's claims were initially disapproved by the Commissioner on June 21, 2011.  *Id*.  Plaintiff requested a hearing and on May 24, 2012, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Gregory Holiday, who considered the case de novo.  (Dkt. 6-2, Pg ID 51-61).  In a decision dated August 27, 2012, the ALJ found that plaintiff was not disabled.  *Id*.  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[2] the Appeals Council on November 14, 2013, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 32-37); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

---

[1] The onset date was amended to January 1, 2011.  (Dkt. 6-2, Pg ID 53).

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings under

Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1965 and was 45 years old on the alleged disability

onset date.  (Dkt. 6-2, Pg ID 60).  The ALJ applied the five-step disability analysis

to plaintiff's claims and found at step one that plaintiff had not engaged in

substantial gainful activity since the amended alleged onset date.  (Dkt. 6-2, Pg ID

53).  At step two, the ALJ found that plaintiff had the following severe

impairments: obesity, degenerative disc disease of the lumbar spine with

spondylosis and radiculopathy, degenerative joint disease of the bilateral knees,

diabetes mellitus with polyneuropathy, dizziness, and adjustment disorder.  (Dkt.

6-2, Pg ID 54).  At step three, the ALJ found no evidence that plaintiff's

combination of impairments met or equaled one of the listings in the regulations.

(Dkt. 6-2, Pg ID 54).

The ALJ determined that plaintiff had the residual functional capacity

(RFC) to perform sedentary work with additional limitations:

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR

404.1567(a) and 416.967(a). The claimant is capable of lifting/carrying a maximum of ten pounds at a time, and sitting for approximately six hours and standing/walking for approximately two hours in an eight-hour workday, with an option to change sit/stand positions. Additionally, she can only occasionally push, pull, or operate foot controls with the left lower extremity, and she can only occasionally climb ramps or stairs. The claimant cannot climb any ladders, ropes or scaffolds, she can only occasionally stoop or crouch, she can rarely kneel (maximum of 5% of the workday), and she cannot crawl. She can only occasionally perform gross manipulation and overhead reaching and handling with the upper left extremity. She must avoid concentrated exposure to temperature extremes and to poorly ventilated areas, she must avoid even moderate exposure to hazards like dangerous machinery, and she must avoid all exposure to unprotected heights. Due to her mental impairment, the claimant is limited to simple, routine tasks, that do not require any complex written or verbal communication, performed in a low-stress job, defined as requiring no more than occasional decision-making with no more than occasional changes in the work setting. The claimant's work must not be at a production rate or production pace, and it can have no more than occasional interaction with the public and coworkers, and no more than occasional supervision.

(Dkt. 6-2, Pg ID 55-56).  At Step Four, the ALJ found that plaintiff could not perform her past relevant work as a housekeeper and babysitter.  (Dkt. 6-2, Pg ID 60).  However, the ALJ determined that, considering plaintiff's age, education, experience, and RFC, there were jobs that exist in sufficient numbers that plaintiff can perform and therefore, plaintiff had not been under a disability from the amended alleged onset date through the date of the decision.  (Dkt. 6-2, Pg ID 60-

4

61).

B.    Plaintiff's Claims of Error

According to plaintiff, the ALJ erred in determining plaintiff's residual functional capacity (RFC) and his determination is not supported by the requisite substantial evidence.  In this matter, plaintiff underwent two consultative examinations (Tr. 305, 309); however neither of these physicians completed an RFC.  An RFC was completed on June 3, 2011, by K. D. McBride (Tr. 312), but the examiner found that plaintiff was capable of occasionally lifting 20 pounds; frequently lifting 10 pounds, standing and/or walking about six hours and pushing and/or pulling on the left extremities frequently; postural limitations limited to occasional except for never being able to climb ladders/ropes/scaffolds; no manipulative limitations; no visual limitations; no communicative limitations; and avoidance of concentrated exposure to extreme cold or extreme heat and to avoid all exposure to hazards.  (Tr. 312).  Despite this RFC, the ALJ determined that plaintiff was limited to sedentary work with several severe limitations.  In fact, the ALJ indicated that he considered plaintiff's allegations regarding her chronic back pain, and the medical evidence supporting her claims, and that he had accommodated those limitations in his RFC.  Despite this, there is no assessment from a medical provider, which supports the ALJ's conclusion and his resulting RFC.

5

Plaintiff also argues that this finding directly contradicts the testimony and evidence presented at the hearing.  Plaintiff testified that she could lift, at most, a gallon of milk, with one hand only.  Further, she testified that she needed to elevate her left leg on a regular basis throughout the day.  (Tr. 61).  Several hypotheticals were posed to the VE, including one including all the above restrictions and instructed the VE to "assume this person requires an opportunity for a break of up to 60 minutes at least one time each work day.  How would that impact on these jobs?"  (Tr. 73).  The VE responded, "[t]hat would eliminate competitive employment."  A further hypothetical was posed to the VE based on her testimony regarding elevating her leg, asking "if an individual had to elevate their leg to hip level to reduce swelling or pain, how would that affect any of the jobs you've outlined?"  (Tr. 73).  The VE replied "That would eliminate competitive employment."  (Tr. 73).  Despite this direct testimony, the ALJ found that plaintiff is not disabled and can hold a sedentary job.  (Tr. 14).  Plaintiff contends that this is particularly significant where the burden to prove that a claimant could perform other work existing in the national economy falls upon the Commissioner.  *Felisky v. Bowen*, 35 F3d 1027, 1035 (6th Cir. 1994).

This finding directly contradicts the testimony and evidence presented at the hearing. Plaintiff testified that she could lift, at most, a gallon of milk, with one hand only. Further, she testified that she needed to elevate her left leg on a regular

6

basis throughout the day. (Tr. 61). Several hypotheticals were posed to the VE, including one including all the above restrictions and instructed the VE to "assume this person requires an opportunity for a break of up to 60 minutes at least one time each work day. How would that impact upon these jobs?" (Tr. 73). The VE responded, "That would eliminate competitive employment." A further hypothetical was posed to the VE based on her testimony regarding elevating her leg, asking "if an individual had to elevate their leg to hip level to reduce swelling or pain, how would that affect any of the jobs you've outlined?" (Tr. 73). The VE replied "That would eliminate competitive employment." (Tr 73). Despite this direct testimony, the ALJ found that plaintiff is not disabled and can hold a sedentary job. (Tr 14). Plaintiff contends that this is particularly significant where the burden to prove that a claimant could perform other work existing in the national economy falls on the Commissioner. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

Plaintiff next points out that agency regulations required that RFC assessments consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting, on a regular and continuous basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p. The medical evidence as a whole (and as noted in the ALJ's findings) indicates that plaintiff has several severe medical

conditions, including: obesity, joint disease of the bilateral knees, diabetes

mellitus with polyneuropathy, dizziness, and adjustment disorder.  Although the

ALJ found that plaintiff was capable of having a sit/stand option and sitting for 6

hours per day, plaintiff testified, and the medical documentation supports, that she

has significant back pain as well as leg pain with prolonged sitting.  Even with a

sit/stand option, plaintiff would still need to either sit, stand or walk for a total of

all of these in an 8 hour work day.  Plaintiff specifically testified that she could sit

for only 30 minutes before "the pain start coming," and then would need to lay

down for approximately 2 hours to recover.  (Tr. 60).  Additionally, the medical

documentation shows that as a result of her diabetes, plaintiff oftentimes suffers

from edema.  (Tr. 338).  On November 16, 2011, she was seen at Detroit

Community Health Connection with 2-3+ pitting edema.  Clearly, an individual

with such a history of leg swelling, and falling as a result of diabetes, as well as a

diagnosis of lumbar radiculopathy, would be incapable of sitting for 6 hours in a

day, with 2 hours of standing and/or walking as the ALJ found Plaintiff able.

Plaintiff also testified that she requires "breaks" after any period more than 30

minutes of standing or sitting and will need to lay down and elevate her legs. (Tr.

41, 56, 61).  Overall, plaintiff contends that the record supports plaintiff's

contention that her severe medical conditions preclude any sustained work

activities.

Plaintiff also asserts that courts have held repeatedly that sedentary work requires the ability to sit for extended periods and is precluded by an impairment which requires a claimant to alternate sitting and standing. *Preston v. Secretary of H.H.S.*, 854 F.2d 815, 819 (1988); *Howse v. Heckler*, 782 F.2d 626, 628 (1986). Plaintiff testified that she cannot sit or stand for an entire day, and needs breaks and to switch back and forth. (Tr. 60-61). In *Faison v. Secretary of H.H.S.*, 679 F.2d 598, 599 (1982), the court took judicial notice that sedentary jobs, while requiring less strength than other jobs, also require more manual dexterity and speed than other jobs. Despite this knowledge, the ALJ specifically limited plaintiff's potential jobs to those that do not occur at a rapid rate. Specifically, "the claimant's work must not be at a production rate or production pace, and it can have no more than occasional interaction with the public and co-workers, and no more than occasional supervision." Plaintiff contends that this finding does not allow for plaintiff to perform even unskilled, sedentary work.

Agency regulations, SSR 96-8p, require that an RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and non-medical evidence (e.g. daily activities, observations)." According to plaintiff, the ALJ does not address the RFC assessment of "Dr. McBride" performed on June 3, 2011. (Tr. 312). Further, the ALJ also made a conclusory statement concerning plaintiff's

allegations.  The ALJ states "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Plaintiff contends, however, that the ALJ does not, as required by SSR 96-8p, include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence.

Finally, plaintiff argues that the ALJ's decision does not address her obesity nor how her diagnosis of obesity affects her residual functional capacity or any of her other medical conditions and how it factors into her RFC.  According to plaintiff, the ALJ merely acknowledged that plaintiff has been diagnosed with morbid obesity (Tr. 28) and that past treating physicians have recommended weight loss or attributed her back problems to her weight.  The ALJ did not properly evaluate plaintiff's diagnosis of obesity as required by agency regulations.  In *Norman v. Astrue*, 694 F.Supp.2d 738, 741 (N.D. Ohio 2010), the court emphasized this is more than a requirement that the ALJ mention the fact of obesity in passing.  The *Norman* court remanded for the ALJ to analyze the claimant's limitations as they actually existed and to explain how obesity (and

10

diabetes) factors into the claimant's ability to function and work, which plaintiff contends is exactly what is required here.  In *Smith v Astrue*, 639 F. Supp.2d 836 (W.D. Mich. 2009) the court found the ALJ was not required to expressly address the effect that morbid obesity had on claimant's ability to perform full time, regular competitive employment where the claimant did not present evidence showing specifically how her obesity, in combination with other impairments, limited her ability beyond the ALJ's residual functional capacity (RFC) determination.  Here, plaintiff asserts that she indicated that she has been trying to lose weight and has been very successful in her efforts (down to 276 pounds from a high of 389 pounds in 2011).  (Tr. 39).  Plaintiff says this fact went unacknowledged in the ALJ's opinion.  Plaintiff testified about the fatigue and mobility issues she has had as a result of her obesity, yet these symptoms were unaddressed by the ALJ.  Plaintiff also points out that in *Johnson v. Secretary of H.H.S.*, 794 F.2d 1106, 1113 (1986), the court held that obesity could not be presumed to be a remediable impairment and further held that a failure to lose weight could not be presumed to be intentional.  According to plaintiff, the fact that she testified to her efforts at weight loss counter any argument that her pain and mobility problems can be attributed to her failure to lose weight alone.

   C.   Commissioner's Motion for Summary Judgment

   According to the Commissioner, plaintiff's argument that the ALJ did not

account for certain limitations relies almost exclusively on her own statements at the hearing concerning what she could do.  (Pl.'s Brief at 11-21).  The Commissioner asserts that this argument is unavailing because the ALJ appropriately found her allegations less than fully credible.  As explained in *Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003), "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." Here, according to the Commissioner, the ALJ reasonably discounted plaintiff's subjective physical complaints because she worked before her alleged onset of disability date, and there was no medical evidence of a decline in her functioning or change in her impairments after the alleged onset of disability date that precluded work.  (Tr. 29).  The Commissioner contends that this finding is well-supported.  With respect to plaintiff's mental limitations, the ALJ reasonably relied on the expert opinion of Dr. Estock, rather than plaintiff's statements.  (Tr. 30).  The Commissioner points out that plaintiff makes no effort to directly dispute any aspect of the ALJ's assessment of her mental limitations.  Thus, any such argument should be deemed waived.  *See Barney-Snyder v. Weiner*, 539 F.3d 327, 331-332 (6th Cir. 2008) (Failure to brief a matter constitutes waiver).

According to the Commissioner, plaintiff does not challenge the ALJ's well-supported finding that there was no medical evidence to show that her

12

condition deteriorated after she stopped working.  (Tr. 29).  Thus, it was

reasonable for the ALJ to determine that, if plaintiff could work with her

impairments before her alleged onset of disability date, she could also work after

that date if her impairments had not caused a significant worsening in her physical

abilities.  As stated by the ALJ, the only impairment plaintiff allegedly developed

after she stopped working was dizziness, and there was no medical evidence to

support that it was as severe as plaintiff alleged.  (Tr. 29).

According to the Commissioner, rather than challenging the ALJ's

reasoning, plaintiff simply restates some of her allegations at the hearing.  (Pl.'s

Brief at 14-16, 21).  The Commissioner asserts that plaintiff's argument is

unavailing because simply reciting her testimony does not show that the ALJ erred

in evaluating that testimony.  The only medical evidence plaintiff cites to support

her argument is a single treatment note indicating that she had edema on

examination.  (Pl.'s Brief at 16, Tr. 338).  The Commissioner maintains that she

fails to explain how this one note shows that she could not perform the restricted

range of sedentary work found by the ALJ.

While plaintiff contends that the ALJ should have more extensively

discussed her obesity and its functional impact, the Commissioner also points out

that she acknowledges that the ALJ discussed her obesity and does not mention

any medical evidence showing that her obesity caused limitations greater than

those in the RFC finding. (Pl.'s Brief at 20, Tr. 28). Similar to her more general argument concerning the ALJ's RFC finding, the Commissioner asserts that plaintiff's argument rests solely on her own subjective complaints, rather than any medical evidence and she fails to show any error in the ALJ's credibility determination or RFC finding.

Plaintiff criticizes the ALJ for not addressing an opinion from "Dr. McBride" and for not relying on a medical source for the RFC. However, the Commissioner points out that K.D. McBride was a single decision-maker for the state DDS, as indicated on the opinion form. (Tr. 319). Therefore, K. D. McBride's "opinion" was an adjudicative document used administratively in the disability determination process, and has no probative value. The Commissioner also asserts that an RFC finding is reserved to the Commissioner and is not a medical assessment. *See* Social Security Ruling 96-5p (The term "RFC" describes an ALJ's finding about the ability of an individual to perform work-related activities based on consideration of all relevant evidence in the record. According to the Commissioner, a medical source statement must not be equated with the administrative finding known as the RFC assessment.); *see also* 20 C.F.R. §§ 404.1527(d) and (d)(2), 416.927(d) and (d)(2) (Opinions on issues reserved to the Commissioner, such as the RFC, are not considered to be "medical opinions"). Therefore, the Commissioner maintains that the ALJ was not required to rely on a

14

medical opinion in making his RFC finding. *See Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) (An ALJ, not a doctor, has the responsibility for determining a claimant's residual functional capacity and, although an ALJ may not substitute her opinion for that of a doctor, he is not required to recite the medical opinion of a doctor verbatim in his residual functional capacity finding).

Plaintiff also argues that she could not perform sedentary work because she needed to shift between sitting and standing, citing such as *Howse v. Heckler*, 782 F.2d 626 (6th Cir. 1986) and *Preston v. Secretary of Health and Human Services*, 854 F.2d 815 (6th Cir. 1988). Although those cases provide some superficial support for Plaintiff's position, the Commissioner contends that a reading of the case on which they rely, *Wages v. Secretary of Health and Human Services*, 755 F.2d 495 (6th Cir. 1985), and a subsequent case discussing *Wages* show that a claimant may still be found not disabled even if she is limited to sedentary work with the option to sit or stand. In *Wages*, the court stated that "[t]he concept of sedentary work contemplates substantial sitting as well as some standing and walking" and "[a]lternating between sitting and standing, however, may not be within the definition of sedentary work." *Id*. at 498 (citation omitted). However, the ALJ in *Wages* did not seek the assistance of a vocational expert to determine the extent to which a sit/stand option eroded the job base, but rather relied on the "Grid." *Id*. at 497. The significance of this was explored in *Bradley v. Secretary*

*of Health and Human Services*, 862 F.2d 1224 (6th Cir. 1988). Bradley argued that the holding in *Wages* "automatically precludes any claimant who must alternate between sitting and standing from engaging in sedentary work; therefore making them eligible for benefits." *Id*. at 1227. The court disagreed, stating that "*Wages* can be distinguished from this case because the [Commissioner's] determinations were based on an application of the grid rather than the testimony of a vocational expert." *Id*. at 1227, citing *Wages*, 755 F.2d at 497). The Commissioner also points out that the agency addressed this in Social Security Ruling 96-9p, which provides that "[a]n individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." Under such circumstances, the Ruling suggests that an ALJ should consult with a vocational expert. According to the Commissioner, the ALJ in this case found that plaintiff could perform a very reduced range of sedentary work with the option to sit or stand. (Tr. 26-27). Therefore, the ALJ appropriately relied on a vocational expert's testimony, as required by the relevant authorities.

Plaintiff makes a similar argument with respect to the ALJ's finding that she could not perform work with a production rate or pace, relying on *Faison v. Secretary of Health and Human Services*, 679 F.2d 598 (6th Cir. 1982), in which

16

the court stated that sedentary work requires less strength than many non-sedentary jobs, but that it involves operations that move faster and require more manual dexterity.  However, the Commissioner contends that *Faison* is distinguishable because it focused on a claimant that could not perform fast, fine movements with his hands.  *Id*.  Here, there is no indication that plaintiff had such problems. Indeed, the limitation on fast-paced work was apparently included to account for plaintiff's mental impairment.  (Tr. 27).  Thus, the Commissioner maintains that plaintiff fails to demonstrate any internal inconsistencies in the ALJ's RFC finding.

As to plaintiff's argument that the ALJ violated the requirement in Social Security Ruling 96-8p that he include in his decision a narrative discussion describing how the evidence supported his conclusions, the Commissioner asserts that, although plaintiff may have preferred more detail in the ALJ's decision, she does not allege that the ALJ's reasoning was insufficiently articulated to follow his reasoning.  According to the Commissioner, the ALJ addressed all of plaintiff's impairments and provided a highly detailed RFC finding.  Simply, plaintiff does not explain how the ALJ's narrative discussion was deficient enough to warrant a remand for another decision.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

18

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

19

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

20

addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis

As the Commissioner points out, the ALJ correctly did not rely on the RFC formulated by K.D. McBride, a single decision-maker (SDM). However, plaintiff

23

correctly points that the ALJ needs to utilize a medical advisor for certain issues. The SDM model was used pursuant to 20 C.F.R. § 404.906(b)(2). This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants. The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan. *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011). This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing. *Id*. Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants. *Id*., citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05. Plaintiff's physical impairments were evaluated by an SDM, K.D. McBride. (Dkt. 6-7g ID 346-353). Thus, no medical opinion was obtained at this level of review, in accordance with this model.

While the ALJ did not rely on the opinion of the SDM, which would have

been wholly improper, the lack of any medical opinion on the issue of equivalence

is still an error requiring remand.  As set forth in *Stratton v. Astrue*, 2012 WL

1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process by which ALJs

are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an

ALJ who makes a step-three equivalence determination without expert-opinion

evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter. *Id.* at. *12; citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted). This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form. *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."). There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments in this record. (Dkt. 6-3, Pg ID 109-110).

The great weight of authority[3] holds that a record lacking any medical advisor opinion on equivalency requires a remand. *Stratton*, at \*13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at \*8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at \*7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").

While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned does not find these cases persuasive. In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use. Nothing about the SDM model changes the ALJ's obligations in the equivalency analysis. *See Barnett v.*

---

[3] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164, at \*2 n. 3 (D. Me. 2003).

*Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).

Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases. Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments. Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which do not otherwise appear to be modified by the SDM model. *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013

28

WL 1192301, *8 (E.D. Mich. 2013) (A medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated.). Thus, remand is also required to obtain a medical opinion on equivalence.

Similarly, there is no consulting physician opinion in the record regarding plaintiff's physical functional limitations. Indeed, no treating physician or any other consulting or examining physician offered any opinions regarding plaintiff's functional limitations resulting from her significant physical impairments. Thus, we are also left with the circumstance of the ALJ interpreting raw medical data without the benefit of an expert medical opinion. Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec*., 344 Fed.Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec*., 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) ("The ALJ must not substitute his own judgment for a

doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC]

determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

Although ultimately a finding of no disability may be appropriate in this case, substantial evidence does not exist on the record to support the current RFC determination because there is no RFC determination by a consulting physician or expert medical advisor. Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on his own independent medical findings. Under these circumstances, the undersigned suggests that a remand is necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding as to plaintiff's physical limitations.

Given the need for remand to obtain an expert medical opinion on plaintiff's physical impairments and resulting functional limitations, plaintiff's credibility will necessarily have to be re-evaluated on remand. While the ALJ sufficiently articulated his residual functional capacity finding under SSR 96-8p by discussing the medical and other evidence on the disputed issues, the ALJ will necessarily have to revamp his narrative discussion based on the new opinions from an expert

medical advisor obtained on remand.

As to plaintiff' obesity, that, by itself, does not constitute a disability and is not qualified as a "listed impairment."  SSR 02-1p, 2000 WL 628049, at *1. "Social Security Ruling 02-01p does not mandate a particular mode of analysis.  It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations."  *See Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2008).  Accordingly, the Sixth Circuit has held compliance with SSR 02-1p only requires demonstration that the ALJ "considered" obesity.  *See id.* ("It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.").  Further, the administrative findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting from the condition.  *Coldiron v. Comm'r of Soc. Sec.*, 2010 WL 3199693, at *7 (6th Cir. 2010), citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  Here, the ALJ mentioned plaintiff's obesity in his decision and obviously gave consideration to this issue in accordance with SSR 02-1p.  However, given that no medical opinion is contained in this record regarding the impact of plaintiff's weight on her physical ability to work, this is an issue that the medical advisor can and should consider on remand.

As to plaintiff's claim that a sit/stand option is not consistent with sedentary

work, the undersigned agrees with the Commissioner's analysis on this issue.

That is, where expert vocational testimony is obtained, as opposed to relying

solely on the Grids, sedentary work is not inconsistent with a sit/stand option.  *See*

*Sharp v. Barnhart*, 152 Fed.Appx. 502, 506-07 (6th Cir. 2005) (rejecting claim

that unskilled light work was inherently inconsistent with a sit/stand option);

*Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224 (6th Cir. 1988)

(sit/stand option not inconsistent with sedentary work if vocational expert

identifies jobs that an individual with the claimant's residual functional capacity

could do); *Whiting v. Comm'r of Soc. Sec.*, 2013 WL 5595359 (E.D. Mich. 2013)

("SSR 83-12 explicitly recognizes that there are some 'light' jobs that can

accommodate a sit/stand option . . . .").  Here, the VE specifically testified that a

sufficient number of jobs in the sedentary work category were available with both

a sit/stand option.  As described in the cases cited by the Commissioner above, it

is well-established that sedentary work is not precluded by a sit/stand option.

Rather, this is an issue that must be addressed by VE testimony, which is precisely

what the ALJ did here.  *Wyatt v. Comm'r of Soc. Sec.*, 2014 WL 793643 (E.D.

Mich. 2014) (Plaintiff's RFC also included a sit/stand option which would not be

accounted for by the grids and would need to be addressed by a VE), citing *Lash v.*

*Astrue*, 2013 WL 821333, at *8 (N.D. Ohio 2013).  The undersigned finds no

reversible error in this regard.  Again, however, the RFC will necessarily need to

33

be reevaluated after the opinion of an expert medical advisor is obtained on remand.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: March 3, 2015                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 3, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov